538 So.2d 193 (1989)
Thomas D. WILLIAMS
v.
STATE of Louisiana, through the OFFICE OF MOTOR VEHICLES, et al.
No. 88-CA-2562.
Supreme Court of Louisiana.
January 30, 1989.
Rehearing Denied March 9, 1989.
*194 Alexis A. St. Amant, Baton Rouge, for plaintiff-appellee.
James C. Dixon, James M. Ross, Baton Rouge, for defendant-appellant.
COLE, Justice.
This case comes before us on direct appeal from the trial court pursuant to La. Const. Art. V, § 5(D). At issue is the constitutionality of La.R.S. 47:503(C) which imposes a minimum "handling fee" of $2.00 on renewals of vehicle "registration or license tax." The trial court ruled the statute was unconstitutional, and the State, through the Office of Motor Vehicles, appeals this ruling. Thomas D. Williams, the named plaintiff and representative of the certified class, cross appeals for allowance of interest on the judgment for the handling fees to be refunded and for an increase in court awarded attorney fees.
The pertinent facts below are not in dispute. Plaintiff Thomas D. Williams (Williams) is the owner of two motor vehicles registered in Louisiana. When he paid the license tax to renew the vehicle registrations, he was assessed a $2.00 per vehicle handling fee, as provided in La.R.S. 47:503(C), in addition to the tax owed. Williams paid the fee without formal protest or giving notice of intent to file suit at that time. He subsequently brought this action in the Nineteenth Judicial District Court seeking a declaration the handling fee is unconstitutional, refund of the handling fees paid and attorney fees. The matter was certified as a class action, with Williams as the representative of the class of persons who paid the handling fee from July 16, 1986 through July 6, 1987.
The State, by and through the Office of Motor Vehicles, filed a peremptory exception to the petition, urging several objections: no cause of action, no right of action, failure to join an indispensable third *195 party and mootness. The State also filed a dilatory exception, alleging prematurity. The trial court denied all of these exceptions without discussion and the matter proceeded to trial. After trial on the merits, the trial court entered judgment for Williams and the plaintiff class declaring the statute imposing the handling fee unconstitutional, ordering the State to prepare a plan for refunding the fees paid by members of the class, and ordering the payment of a $5,000.00 attorney fee to the plaintiff's attorney out of the money to be refunded.

ISSUES
The constitutional challenge to La.R.S. 47:503(C) raises two questions:
a. Whether La.R.S. 47:503(C) is unconstitutional as contrary to La. Const., Art. VII, § 5 which provides for an annual license tax of $3.00 on automobiles; and
b. Whether La.R.S. 47:503(C) is unconstitutional as passed in violation of La. Const. Art. III, §§ 2(A) and 16.
In addition, three procedural questions were raised by the parties that bear upon the resolution of this matter:
1. Whether the State's peremptory exception raising the objection of no cause of action was improperly denied since Williams failed to satisfy the conditions of La.R.S. 47:1576 for filing suit to recover illegally assessed taxes;
2. Whether the State's dilatory exception raising the objection of prematurity was improperly denied since Williams failed to seek a refund through the Board of Tax Appeals pursuant to La.R. S. 47:1481-1485 and 47:1621(D) prior to filing suit; and
3. Whether the trial court erred in failing to allow legal interest on the handling fees it ordered refunded and in awarding the attorney for the plaintiff class only $5,000.00 in attorney fees.

CONSTITUTIONAL ISSUE
We turn first to the central issue raised in this appeal: the constitutionality of the $2.00 minimum "handling fee" imposed on vehicle license tax renewals by La.R.S. 47:503(C). The statute provides:
Renewals of the registration or license tax may be made by mail. In addition to the registration or license tax, there shall be a minimum assessed fee of two dollars to cover the cost of handling the processing of renewals. Additionally, in accordance with the Administrative Procedure Act, there may be additional charges assessed to cover the cost of operation. Any proposed additional charges shall be subject to oversight review by the Joint Legislative Committee on Transportation, Highways, and Public Works. La.R.S. 47:503(C). Williams claimed, and the trial court agreed, that this statute conflicts with Article VII, § 5 of the Constitution of 1974 which states:
The legislature shall impose an annual license tax of three dollars on automobiles for private use, and on other motor vehicles, an annual license tax based upon horsepower, carrying capacity, weight, or any of these. No parish or municipality may impose a license fee on motor vehicles.
La. Const. Art. VII, § 5.
In its written reasons for judgment, the trial court found La. Const. Art. VII, § 5 limits the license tax on private automobiles to $3.00. It reasoned, the State cannot increase this license tax by referring to the increase as a handling charge. We agree. La.R.S. 47:503(C) effectively raises the amount required to renew an auto registration to at least $5.00 contrary to the express terms of Article VII, § 5. In light of this conflict, the statute must fall.[1]
*196 It should be noted the $2.00 handling fee represents only the minimum charge that may be imposed on renewals over and above the constitutionally permissible annual tax. R.S. 47:503(C) contains no ceiling on the maximum "handling fee" which might be charged. Were we to accept the State's argument that Article VII, § 5 permits it to impose an unlimited "handling fee" which must be paid as a condition for renewing a vehicle license, we would nullify the provision. The "handling fee" could continue to increase while the fiction of a three dollar annual license tax was maintained.[2] The plain import of Article VII, § 5 precludes such an absurd result. The State cannot effect a de facto nullification of a constitutional provision it is powerless to repeal save by constitutional amendment.[3]
We find confirmation of our interpretation of the purpose of Article VII, § 5 in its constitutional history. Section 5 might best be described as a "loss leader." The $3.00 license tax, a holdover from the 1921 constitution (La. Const. Art. VI, § 22 (1921), was not economically efficient even in 1974, but it was included in the new constitution to help ensure it would be ratified.[4] The delegates plainly intended the provision to fix the cost of an automobile license at $3.00 regardless of the actual cost, and drafted it accordingly. The mandatory nature of the $3.00 annual license tax is clear from the language employed: "The legislature shall impose an annual license tax of three dollars...." (emphasis added) The Legislature has no discretion to alter the amount that must be paid for a private automobile license.[5] We do not question the State's need to exploit all available sources of revenue in these hard times, nor do we pass upon the wisdom of Article VII, § 5. We are, however, bound to apply the constitution here, and must conclude the State is constitutionally obliged to look elsewhere for revenue.
The State has vigorously argued that our jurisprudence distinguishes between taxes enacted pursuant to the taxing power and fees imposed pursuant to the police power. See, e.g., ACORN v. City of New Orleans, 407 So.2d 1225 (La.1981); Audubon Ins. Co. v. Bernard, 434 So.2d 1072 (La.1983). It stressed the fact the fee imposed under R.S. 47:503(C) is revenue neutral in that it does not generate revenue for the state but rather helps defray the cost to the State of exercising its police power by registering automobiles. We agree with the distinction the State draws between taxes and fees, but in the context of Article VII, § 5, this is a distinction without a difference. Since a license may not be obtained without payment of the handling fee as well as the tax, the effect of R.S. 47:503(C) is to raise the cost of the license required to operate an automobile above the constitutionally prescribed maximum of three dollars per year.
Finally, the State points out the strong presumption of constitutionality enjoyed by *197 legislative enactments.[6] In our recent decision in Board of Directors of Louisiana Recovery District v. All Taxpayers, we articulated a rigorous test to be applied in a constitutional attack upon an act of the Legislature: "[I]t must be shown clearly and convincingly that it was the constitutional aim to deny the Legislature the power to enact the statute." 529 So.2d 384, 388 (La.1988). Both the language and history of Article VII, § 5 clearly and convincingly persuade us it is intended to prevent the Legislature from charging citizens more than three dollars per year to license an automobile. Though couched in positive terms, the provision is also prohibitary in its effect. Any other reading of Article VII, § 5 would render the provision largely meaningless. La.R.S. 47:503(C) conflicts with the constitutionally ordained $3.00 annual license tax, and we therefore find it unconstitutional.[7]

PROCEDURAL ISSUES
Our analysis is not at an end with the conclusion the fee imposed by La.R.S. 47:503(C) violates Article VII, § 5 of the constitution. Rather, we must examine the impact of the exceptions still urged by the State on the remedy to which the plaintiff class is entitled.
Article VII, § 3 of the 1974 Constitution provides in relevant part: "It [the Legislature] shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." The Legislature has complied with this constitutional mandate by creating two alternative mechanisms by which an aggrieved taxpayer may obtain a refund of taxes paid when he feels a tax collector has acted illegally.[8] In La.R.S. 47:1481 et seq., the Legislature established an administrative procedure for challenging taxes through the Board of Tax Appeals. In La.R.S. 47:1576, the Legislature created a legal remedy and right of action for the adjudication of tax questions and the refund of moneys improperly collected.
Since Williams chose to pursue a judicial challenge to the statute to recover the handling fee we have found unconstitutional, he is bound by the provisions of R.S. 47:1576 which created his cause of action.[9] R.S. 47:1576(C) deals with the precise challenge Williams raises here: "This Section shall be construed to provide a legal remedy in the state courts in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of Louisiana." In creating this judicial remedy, however, the Legislature imposed two conditions precedent to suit. First, the challenged "payment of any amount found due" must be made under protest and notice of the taxpayer's intent to file suit must be given at the time of payment. La.R.S. 47:1576(A). Second, if the taxpayer wishes to receive interest on the sum paid in the event his suit is successful, he must file suit within 30 days *198 of payment. Id. These limitations on a taxpayer's right to sue have been held permissible under the constitutional mandate of Article VII, § 3. See Loe v. McNamara, 501 So.2d 298, 302 (La.App. 1st Cir.1986), writ denied 503 So.2d 480 (1987).
It is clear from the record below that Williams failed to comply with the prerequisites to filing suit set out in R.S. 47:1576. Williams admitted he did not give the clerk at the Office of Motor Vehicles notice of intention to file suit for the recovery of the fee at the time of payment. Nor did Williams' petition allege payment under protest with notice of intention to file suit. In light of these failures, the State's peremptory exception raising the objection of no cause of action should have been sustained. The trial court erred in denying this exception.[10]See Ingram Oil Co. v. St. John the Baptist Parish School Board, 406 So.2d 784, 787 (La.App. 4th Cir.1981), writ denied 412 So.2d 87 (1982). The trial court was not free to ignore the legislatively prescribed conditions for recovering taxes illegally assessed. That portion of the trial court's judgment ordering the State to formulate a repayment plan for the "handling fees" collected is reversed.
Sustaining the State's exception does not totally deprive the plaintiff of relief. By failing to comply with the prerequisites of R.S. 47:1576, Williams and the members of the plaintiff class are precluded from recovering in this action the handling fees already paid under R.S. 47:503(C).[11] In his petition, however, Williams also prayed: "That the provisions of LSA-R.S. 47:503(C) which authorize the imposition of the `handling fee' be declared to be in violation of the Constitution of Louisiana." This language is properly interpreted as a prayer for declaratory relief under La.C.C.P. arts. 1871-1872. Article 1872 specifically permits determination of the validity of a statute in a declaratory judgment action, and, unlike R.S. 47:1576, the Code of Civil Procedure imposes no preconditions that must be met before suit can be brought.
We have carefully examined the parallel remedies afforded by La.R.S. 47:1576 and La.C.C.P. arts. 1871 et seq. and find them to be compatible. R.S. 47:1576(B) clearly affords a litigant the opportunity to litigate the constitutionality of a tax or fee but it does not prohibit a constitutional challenge by other legally permissible means.[12] Absent a clear statement of legislative intent to the contrary, we will not read R.S. 47:1576 so narrowly as to deny an aggrieved citizen an otherwise permissible vehicle to challenge judicially the constitutionality of a tax. Finally, since Article 1871 does not afford Williams a monetary judgment, the State's justifiable fiscal concerns which prompted the imposition of the preconditions in R.S. 47:1576 are not implicated. The State is not prejudiced by the adjudication of the constitutional question in the context of a declaratory judgment action. We modify the judgment of the trial court accordingly and hold that Williams is entitled to a judgment declaring La.R.S. 47:503(C) is unconstitutional as violative of La. Const. Art. VII, § 5.

CONCLUSION
The "handling fee" imposed by R.S. 47:503(C) violates both the letter and spirit of Article VII, § 5 of the 1974 Constitution inasmuch as it effectively raises the annual license tax on an automobile above the *199 constitutional maximum. It therefore cannot stand. Because of Williams' failure to follow the requirements of R.S. 47:1576, he and the plaintiff class cannot recover the fees already collected. The State's peremptory exception to that portion of the plaintiff's petition is properly sustained, and the trial court's judgment ordering repayment of the fees collected is reversed. Because Williams did state a valid cause of action for a declaratory judgment on the constitutionality of R.S. 47:503(C), he is awarded judgment declaring the statute unconstitutional. Williams' claim for legal interest is rendered moot. Since there is no fund from which attorney fees may be drawn under La.C.C.P. art. 595, the trial court's award of attorney fees is reversed. All permissible costs are taxed to the State.
REVERSED IN PART; AFFIRMED IN PART AS MODIFIED; AND RENDERED.
MARCUS, J., dissents and assigns reasons.
DENNIS, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
I disagree with the majority's conclusion that La.R.S. 47:503(C) imposes a tax in violation of La. Const. art. VII, § 5. Rather, I consider it a regulatory measure enacted under the state's police power. As such, La.R.S. 47:503(C) is not a tax and therefore was not enacted in violation of La. Const. art. VII, § 5.
I feel the majority erred in failing to distinguish between a tax and a fee incidental to the exercise of police power. In Audubon Insurance Co. v. Bernard, 434 So.2d 1072 (La.1983), we explained:
It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. In similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax. [Citations omitted.]
Thus, the majority's statement that the distinction between taxes and fees is a "distinction without a difference" is not correct.
La. Const. art. VII, § 5 imposes a tax:
The legislature shall impose an annual license tax of three dollars on automobiles for private use, and on other motor vehicles, an annual license tax based upon horsepower, carrying capacity, weight, or any of these. No parish or municipality may impose a license fee on motor vehicles. [Emphasis added.]
By this provision, the legislature is permitted to impose a tax on motor vehicles. This tax produces general revenue for the state. Although the article prohibits a parish or municipality from imposing a license fee on motor vehicles, no such prohibition is placed against the state.
La R.S. 47:503(C) provides a minimum fee to cover the costs of renewals:
Renewals of the registration or license tax may be made by mail. In addition to the registration or license tax, there shall be a minimum assessed fee of two dollars to cover the cost of handling the processing of renewals. Additionally, in accordance with the Administrative Procedure Act, there may be additional charges assessed to cover the cost of operation. Any proposed additional charges shall be subject to oversight review by the Joint Legislative Committee on Transportation, Highways, and Public Works. [Emphasis added.]
There is no contention that La.R.S. 47:503(C) is designed to raise general revenues for the state. Rather, its limited purpose is to cover the costs of handling the processing of renewals. It is therefore a *200-210 fee designed to allow the state to effectuate the regulation of automobiles under its police power.
Clearly, the fee is reasonable and designed to cover the costs of renewal. At the time of this case, the fee was set at $2.00. There was evidence in the majority opinion that in 1974, the cost of producing and distributing a license plate was $4.50. Therefore, the $2.00 fee for handling the costs of renewals does not appear unreasonable.
Hence, I consider that La.R.S. 47:503(C) is not a tax and therefore not enacted in violation of art. VII, § 5 of the 1974 Louisiana Constitution.
Accordingly, I respectfully dissent.
NOTES
[1] The handling fee is also unconstitutional as applied to other types of motor vehicles besides private automobiles. While license fees on these vehicles are not limited to $3.00 per year, the taxes assessed can only be based on "horsepower, carrying capacity, weight or any of these." La. Const. Art. VII, § 5. The handling fee in question is not based on any of these constitutional criteria and must therefore be declared void with respect to other vehicles as well.
[2] Counsel for the State admitted at oral argument that under La.R.S. 47:503(C), the state has the power to impose a $50.00 "handling fee" that would have to be paid for renewal of vehicle registration while the "tax" remained $3.00 per year.
[3] The State has already tried and failed to increase the fee to be charged for an automobile license by permissible means. Act 1080 of 1986 proposed a constitutional amendment to Article VII, § 5 which would raise the annual license tax to $25.00. 1986 La.Acts 1080. The proposed amendment was rejected by the voters.
[4] Delegate Newton stated in the debate on his proposed amendment to delete Article VII, § 5 from the constitution that license plates then cost approximately $4.50 to manufacture and distribute. See IX Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts at 2975 (99th Days Proceedings, December 14, 1973) A proposed amendment to raise the tax to a cost-efficient level was rejected. Id. at 2799-2800. It was suggested a failure to retain the $3.00 license in the 1921 Constitution would leave the new Constitution open to attack; with its retention, the State could look to alternatives, such as driver's license fees, to subsidize the low-cost auto license. See generally id. at 2794-2800 and in particular the remarks of Delegate Champagne, the floor sponsor of the provision, at 2794.
[5] We must disagree with the trial court's dictum that R.S. 47:503(C)'s handling fee would pass constitutional muster if it were limited to renewals processed by mail. Nothing in Article VII, § 5 or its history provides for such an exception regardless of economic consequences.
[6] See, e.g., Board of Commissioners v. Department of Natural Resources, 496 So.2d 281 (La. 1986); New Orleans Firefighters Ass'n v. Civil Service Comm'n of the City of New Orleans, 422 So.2d 402 (La.1982).
[7] Because we find R.S. 47:503(C) is unconstitutional as violative of La. Const. Art. VII, § 5, we pretermit discussion of the plaintiff's alternative challenge to the statute under La. Const. Art. III, §§ 2(A) and 16.
[8] These two remedies are made explicit in La.R. S. 47:1621(D):

This section shall not be construed to authorize any refund of tax overpaid through a mistake of law arising from the misinterpretation by the collector of the provisions of any law or of the rules and regulations promulgated thereunder. In the event a taxpayer believes that the collector has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie. (emphasis added).
[9] Though R.S. 47:1576 refers specifically to amounts found due by the secretary of the Department of Revenue and Taxation, the director of Public Safety is given the same power and authority as the secretary with respect to the vehicle registration license tax of R.S. 47:503(C). See La.R.S. 47:531.1. When R.S. 47:531.1 is read in pari materia with R.S. 47:1576, it is clear R.S. 47:1576 provides the right of action and remedy in suits against the director of the Office of Motor Vehicles in his role as tax collector.
[10] Because we conclude this peremptory exception is properly sustained, we pretermit discussion of the defendant's dilatory exception raising the objection of prematurity.
[11] See Sperry Rand Corp. v. Collector of Revenue, 376 So.2d 505 (La.App. 1st Cir.1979), writ denied 376 So.2d 156 (1979). In Sperry Rand, the Court of Appeal found the plaintiff's failure to pay under protest and give notice of intent to sue foreclosed its right of action under R.S. 47:1576. Significantly, this failure did not preclude Sperry Rand from obtaining administrative relief and a refund of the tax wrongfully assessed by proceedings before the Board of Tax Appeals. Id. at 507.
[12] See Archer Daniels Midland v. McNamara, 544 F.Supp. 99 (M.D.La.1982). There, the court noted that although ADM was not afforded a remedy under La.R.S. 47:1576 because it failed to meet the statutory criteria, Articles 1871 and 1872 of the Code of Civil Procedure did afford a means by which the legality of the fuel tax at issue could be challenged. Id. at 102-103.