614 So.2d 697 (1993)
CHURCH POINT WHOLESALE BEVERAGE CO., INC., et al.
v.
Leon R. TARVER, Secretary, Department of Revenue and Taxation, State of Louisiana, et al.
No. 92-CA-2658.
Supreme Court of Louisiana.
February 22, 1993.
Rehearing Denied April 8, 1993.
*698 Richard P. Ieyoub, Atty. Gen., Roy A. Mongrue, Jr., Asst. Atty. Gen., Thomas S. Halligan, Norman W. Ershler, Baton Rouge, for appellant.
Berlon M. Mauldin, Gary, Field, Landry & Bradford, Baton Rouge, James C. Russell, Marlon Van Harrison, for appellee.
KIMBALL, Justice.[*]
The trial court in this case granted plaintiffs' motion for partial summary judgment declaring LA.REV.STAT. 26:342 (the Beer Tax Statute) unconstitutional and granted in part and denied in part the State's exception of prescription. The issues presented in this appeal are: (1) whether plaintiffs have standing to seek a declaratory judgment on the constitutionality of the Beer Tax Statute; and (2) whether the trial court erred with regard to the exception of prescription by granting it in part and denying it in part.
We find that plaintiffs lack standing to obtain a summary judgment declaring the statute unconstitutional because their claim for the recovery of taxes based on the allegedly unconstitutional statute is prescribed. We therefore find the trial court erred in granting the summary judgment.[1]
We also conclude the trial court did not err in denying in part the State's exception of prescription. However, as to the exception, we herein clarify: (1) that exceptions of prescription do not lie as to actions for *699 declaratory judgment, (2) that plaintiffs' claim for the recovery of taxes based on the alleged unconstitutionality of the Beer Tax Statute is fully prescribed, and (3) that plaintiffs' claim for a recovery of taxes based on the alleged unconstitutionality of the Tax Exemption Scheme (LA.REV.STAT. 47:4301 et seq.) as it operated between 1982 and 1986 in favor of Dixie Brewing Company is prescribed in part.

FACTS
Church Point Wholesale Beverage Co., Inc., Baton Rouge Wholesale Beverage Co., Inc., and Monroe Wholesale Beverage Co., Inc. (hereinafter "plaintiffs") filed claims with the Louisiana Board of Tax Appeals ("BTA") on June 17, 1988. (BTA Docket Nos. 3314, 3315 and 3316). These petitions, as later amended, sought recovery of excise taxes paid voluntarily and without protest by plaintiffs pursuant to LA.REV.STAT. 26:342 from 1974 until July, 1990.
Prior to its amendment in 1974, LA.REV. STAT. 26:342, which provides for beer excise taxes, did not differentiate in treatment between beer produced in Louisiana and beer produced outside of Louisiana. The statute was amended in 1974 to provide:
There is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and at a like rate for fractional parts of a barrel. However, the tax shall be five dollars per barrel upon the first thirty thousand barrels of beverages of low alcoholic content brewed and produced inside the state of Louisiana for which a tax liability is incurred in each calendar year by a brewery situated within the state.
In 1979, the statute was amended to provide in pertinent part:
A. Except as otherwise provided herein, there is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and at a like rate for fractional parts of a barrel.
B. The tax levied and imposed by this Section and incurred in each calendar year on beverages of low alcoholic content brewed and produced by a brewery within the state of Louisiana shall be levied at the following rates:
(1) In 1979, any tax hereunder shall be due and owing:
(a) On the first 60,000 barrels after the effective date of this Actno tax.
(b) On all barrels in excess of 60,000 barrels after the effective date of this Actten dollars per barrel.
(2) In 1980, any tax hereunder shall be due and owing:
(a) On the first 45,000 barrelsno tax.
(b) On all barrels in excess of 45,000 barrelsten dollars per barrel.
(3) In 1981, any tax hereunder shall be due and owing:
(a) On the first 35,000 barrelsno tax.
(b) On all barrels in excess of 35,000 barrelsten dollars per barrel.
(4) In 1982, any tax hereunder shall be due and owing:
(a) On the first 30,000 barrelsfive dollars per barrel.
(b) On all barrels in excess of 30,000 barrelsten dollars per barrel.
....
In 1987, the statute was again amended to provide:
There is levied and imposed on all beverages of low alcoholic content handled in Louisiana an excise tax of ten dollars per barrel containing not more than thirty-one gallons, and at a like rate for fractional parts of a barrel.
On October 19, 1990, plaintiffs filed a petition in the Nineteenth Judicial District Court for East Baton Rouge Parish.[2] The *700 petition's prayer for relief requested in pertinent part:
(1) a declaration that LA.REV.STAT. 26:342 as amended in 1974 and 1979 was unconstitutional;
(2) a declaration that LA.REV.STAT. 47:4301, in conjunction with 26:342, was and is presently unconstitutional;
(3) a declaration that the procedure provided for in LA.REV.STAT. 47:1481-1486 is unconstitutional;
(4) a declaration that no constitutional remedy exists for the recovery of payment of nonprotested beer taxes, where those taxes are later found to be unconstitutional;
(5) a declaration that plaintiffs are entitled to pursue a claim for recovery of taxes under the theories of unjust enrichment and/or payment of a thing not due;
(6) an order ordering the return to plaintiffs of all nonprotested beer taxes paid by them from 1974 until July, 1990;
(7) an order ordering the return of all beer taxes paid by plaintiff under protest since August, 1990; and
(8) an injunction to prevent the BTA from acting on the plaintiffs' claims until the district court ruled on whether or not the procedure in LA.REV.STAT. 47:1481-86 is constitutional.
On January 24, 1992, plaintiffs filed a motion for partial summary judgment seeking to have the trial judge declare LA.REV. STAT. 26:342 as in effect between 1974 and 1987 unconstitutional. On March 4, 1992, the State of Louisiana filed a peremptory exception of prescription, alleging that plaintiffs' claims are prescribed.
The trial judge addressed these two pleadings in Oral Reasons for Judgment on May 7, 1992, later incorporated in a signed Judgment on June 15, 1992. The judge granted plaintiffs' partial summary judgment, declaring that 26:342 as amended in 1974 and in 1979 was unconstitutional. The judge also granted in part and denied in part the State's exception of prescription, finding that LA.REV.STAT. 47:1621 provides a prescriptive period of three years for a claim to recover taxes, but also concluding that prescription was interrupted on June 17, 1988 by the filing of claims with the BTA.[3]

JURISDICTION
Under Article 5, Section 5(D) of the Louisiana Constitution of 1974, a case shall be appealable to the supreme court if a law has been declared unconstitutional. Consequently, this court has appellate jurisdiction to determine whether the trial court erred in granting plaintiffs' motion for partial summary judgment seeking a declaration that LA.REV.STAT. 26:342 was unconstitutional as amended in 1974 and in 1979.
Further, subsection (F) of Article 5, Section 5 provides that if the supreme court has appellate jurisdiction under Section 5, then that jurisdiction may extend over all issues involved in the civil action before it.[4] Therefore, despite the State's arguments to the contrary, we may choose to exercise appellate jurisdiction over the *701 exception of prescription in this case.[5] We do not, however, interpret Article 5, Section 5(F) to mean that we have appellate jurisdiction over all issues raised in the plaintiff's petition but only those which have been ruled on by the trial court. Consequently, although it was argued by plaintiffs' that the tax exemption scheme set forth by LA.REV.STAT. 47:4301-06 is unconstitutional, that issue is not before this court because it was not included in the partial motion for summary judgment nor ever ruled on by the trial court.[6]

DECLARATORY JUDGMENT
Louisiana Code of Civil Procedure art. 1871 authorizes the judicial declaration of "rights, status, and other legal relations whether or not further relief is or could be claimed." Article 1872 designates who can bring such an action:
A person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and obtain a declaration of rights, status, or other legal relations thereunder.
The jurisprudence has restricted the application of the articles in that courts will only act in cases of a present, justiciable controversy and will not render merely advisory opinions. Hainkel v. Henry, 313 So.2d 577, 578 (La.1975). In fact, the constitution implicitly prohibits the rendering of advisory opinions. Aucoin v. Dunn, 233 So.2d 530, 531 (La.1970); Belsome v. Southern Stevedoring, Inc., 239 La. 413, 118 So.2d 458, 461 (1960); State v. Fant, 43 So.2d 217, 220 (La.1949).
In State v. Board of Supervisors, 228 La. 951, 84 So.2d 597, 599-600 (1955) this court discussed the effect on Louisiana law of the Uniform Declaratory Judgments Act, the precursor to the articles on declaratory judgment in the Code of Civil Procedure.
Ever since 1810, it has been fundamental in the law of Louisiana that courts sit to administer justice in actual cases.... This principle has been strictly adhered to throughout the years and, in reality, is determinative of the matter of the jurisdiction of our courts, original and appellate, as defined by Sections 35, 29 and 10 of Article 7 of the Constitution.[7]
Section 35 of Article 7 of the Constitution vests the district courts throughout the State with original jurisdiction in all civil matters "regardless of the amount in dispute." Thus, in order for the court to become seized of jurisdiction in the first instance, there must be a dispute or controversy over some matter or right in which the opposing parties have an interest. For one to sue, his interest must be real and actual....
The Uniform Declaratory Judgments Act has not had the magical effect of changing the above stated basic tenets. In truth, to construe the statute as extending jurisdiction to the courts to validate legislative action, or otherwise render advisory opinions, would effect an unconstitutional enlargement of the grant of judicial power which is restricted to real controversies.
... [I]t is settled that courts of Louisiana are without power to render judgments over moot and abstract propositions and that a litigant not asserting a *702 substantial existing legal right is without standing in court.
... [I]n order for an action to be entertained under the Act, it must be based on an actual controversy....
84 So.2d at 599-600 (citations omitted) (footnotes omitted).
We recognize that La.C.C.P. art. 1871 allows the judicial declaration of rights "whether or not further relief is or could be claimed." However, the Louisiana Constitution prohibits courts from issuing merely advisory opinions which will have no effect on the rights of the parties. Article 1871 must be given an interpretation which comports with the constitution. As such, we find that if the plaintiffs' claim for a refund of taxes in this case is prescribed, plaintiffs would lack standing to seek a declaratory judgment, and any opinion which we or the lower court might render on the constitutionality of the Beer Tax Statute would be an impermissible advisory opinion.

BOARD OF TAX APPEALS
Plaintiffs explain in their petition and in briefs to this court that they filed claims with the Board of Tax Appeals pursuant to LA.REV.STAT. 47:1481-86 (the Claims Against the State procedure) on June 17, 1988 seeking in pertinent part recovery of beer excise taxes paid voluntarily and without protest from 1974 to 1987, a period during which they contend the Beer Tax Statute was unconstitutional. Plaintiffs further explain that they later filed the petition in district court seeking a judgment declaring the Beer Tax Statute unconstitutional because such a finding is an integral part of their case and administrative agencies do not have the jurisdiction to find state statutes unconstitutional.[8] Conversely, the State argues that the Claims Against the State procedure cannot be used to recover taxes paid without protest because the sole post-deprivation remedy for a taxpayer to recover taxes is found in LA.REV.STAT. 47:1576 (the Payment Under Protest procedure).[9]
In order to determine whether plaintiffs' claim for the recovery of taxes is prescribed so as to preclude standing, we must determine what prescriptive period applies to such a claim. To do this, we must first determine whether the Claims Against the State procedure can be used, as plaintiffs assert, for the recovery of taxes paid without protest.

A. Recovery of Taxes
In McKesson v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court set forth the federal constitutional parameters imposed on the recovery of taxes. The Court explained that a state has two options:
Because exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause. The State may choose to provide a form of "predeprivation process," for example, by authorizing taxpayers to bring suit to enjoin imposition of a tax prior to its payment, or by allowing taxpayers to withhold payment and then interpose their objections as defenses in a tax enforcement proceeding initiated by the State. However, ... it is well established that a State need not provide predeprivation process for the exaction of taxes....

*703 [Alternatively, a State may provide post-deprivation refund relief.] To satisfy the requirements of the Due Process Clause, therefore, in this refund action the State must provide taxpayers with, not only a fair opportunity to challenge the accuracy and legal validity of their tax obligation, but also a "clear and certain remedy," for any erroneous or unlawful tax collection to ensure that the opportunity to contest the tax is a meaningful one.
....
[With regard to the post-deprivation relief], [t]he State might, for example, provide by statute that refunds will be available only to those taxpayers paying under protest or providing some other timely notice of complaint; execute any refunds on a reasonable installment basis; [or] enforce relatively short statutes of limitation applicable to such actions.... The State's ability in the future to invoke such procedural protections suffices to secure the State's interest in stable fiscal planning when weighed against its constitutional obligation to provide relief for an unlawful tax.
Id. at 36-39, 45, 110 S.Ct. at 2250-51, 2254 (citations omitted) (footnotes omitted).
Thus, Due Process requires that a state provide either predeprivation relief or post-deprivation relief for the recovery of taxes. First, the state can afford predeprivation relief such that taxpayers have the ability to meaningfully challenge the tax before having to pay the tax.
[I]f a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to challenge their validity in a predeprivation hearing, payments tendered may be deemed "voluntary." The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.
Id. at 38 n. 21, 110 S.Ct. at 2251 n. 21.
Second, the state can choose to employ "financial sanctions and summary remedies such as distress sales," thus collecting the taxes under "duress."[10] If a state chooses this option, to comport with Due Process it must provide meaningful post-deprivation relief. That relief must afford an opportunity to challenge the validity of the tax obligation and a clear and certain remedy. Because providing refunds might "undermine the State's ability to engage in sound fiscal planning,"[11] a state would be free to impose various procedural requirements on actions for post-deprivation relief. The Court specifically approved of two requirements: (1) that only taxpayers paying under protest would be entitled to relief and (2) the actions could be subject to short statutes of limitation.[12]
Concerning taxes collected by the Collector of Revenue, as are the taxes in this case, Louisiana appears to have made an effort to provide both pre- and post-deprivation relief. See, e.g., LA.REV.STAT. 47:1434, 1561-74 which purport to provide predeprivation relief. The legislature has also attempted to afford taxpayers with what would constitute meaningful post-deprivation relief under the U.S. Constitution. It is clear that the scheme found in LA.REV.STAT. 47:1576, the Payment Under Protest procedure, is intended to provide post-deprivation relief for the recovery of taxes paid under protest when a statute is later found unconstitutional. At issue in this case, however, is whether the legislature has provided any other statutory post-deprivation remedy for the recovery of taxes. We reach this issue because it is clear plaintiffs did not pay under protest the beer taxes owed from 1974-1987 which they now seek to recover. Therefore, they cannot avail themselves of the mode of recovery found in the Payment Under Protest procedure under LA.REV.STAT. 47:1576.

B. The Payment Under Protest Procedure
The Payment Under Protest procedure provided for in LA.REV.STAT. 47:1576 *704 has not changed in substance since its origin.[13] It provides that if a taxpayer protests the payment of any tax or enforcement of any tax law, he must pay the amount due and at that time give notice of intention to file suit for recovery of the tax. The amount paid is then placed in escrow for 30 days. If suit is filed within that period, the funds will be further held pending outcome of the suit. If suit is not timely filed, courts have held the taxpayer no longer has a right to proceed in district court for the recovery of taxes. Bagneris v. City of New Orleans, 130 So.2d 421, 424 (La.App. 4th Cir.1961).

C. The Claims Against the State Procedure[14]
Plaintiffs argue that the Claims Against the State procedure found in LA.REV.STAT. 47:1481-86 is a statutory remedy whereby a taxpayer can seek to recover taxes paid without protest pursuant to an unconstitutional statute.[15] The State, on the other *705 hand, argues that LA.REV.STAT. 47:1481-86 is a claims procedure existing solely for the purpose of giving to plaintiffs who have "judicially enforceable" claims the option to "settle" their claims without having to go to court. If the claim lacks merit under the law as would be applied in a court, then it would lack merit before the BTA. Thus, because plaintiffs failed to protest the payment of the taxes under LA.REV.STAT. 47:1576, the State argues they could not recover under Section 1576 and therefore cannot recover as a "claim against the state."
Whether or not the Claims Against the State procedure may be used to recover taxes paid voluntarily and without protest has been addressed before by the courts of this state. In Sperry Rand Corp. v. Collector of Revenue, 376 So.2d 505 (La.App. 1st Cir.), writ denied, 376 So.2d 156 (1979) plaintiff paid a use tax without protest from 1973 to 1975. In 1976, plaintiff sought a refund from the Collector of Revenue for $31,000.00 on the ground that the Collector erred in his definition of "cost price" under the taxing statute. The Collector denied the refund, and plaintiff filed a petition with the Board of Tax Appeals. The Board entered an order directing the Collector to refund the taxes to plaintiff, and the State sought judicial review. The district court affirmed.
The court of appeal noted that plaintiff did not protest the payment of the tax and therefore had no right of action under 47:1576. However, the court found that the Board of Tax Appeals has the authority to grant a refund regardless of whether the provisions of 47:1576 had been followed:
We think [R.S. 47:1481] was intended to give the Board of Tax Appeals the authority to grant claims for taxes erroneously paid to the state, when principles of justice and equity so require, even though a refund might not otherwise be permitted by law. There is certainly no abuse of that authority in this case, in which a tax, later found to be unconstitutional, was paid.
376 So.2d at 507.
This court addressed the viability of using the Claims Against the State procedure to recover taxes voluntarily paid without protest in Williams v. State, 538 So.2d 193 (La.1989). A taxpayer paid a license tax/handling fee without protest. He later brought an action directly in the district court seeking a judgment declaring the tax unconstitutional and a refund of the tax. The court stated:
Article VII, § 3 of the 1974 Constitution provides in relevant part: "It [the Legislature] shall provide a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." The Legislature has complied with this constitutional mandate by creating two alternative mechanisms by which an aggrieved taxpayer may obtain a refund of taxes paid when he feels a tax collector has acted illegally. In La.R.S. 47:1481 et seq., the Legislature established an administrative procedure for challenging taxes through the Board of Tax Appeals. In La.R.S. 47:1576, the Legislature created a legal remedy and right of action for the adjudication of tax questions and the refund of moneys improperly collected.

538 So.2d at 197 (emphasis added) (footnote omitted).[16] *706 The court found that because Williams made a "judicial challenge" to the tax, he was constrained by the provisions of 47:1576. Because he had not paid the tax under protest nor given notice at the time of payment of intent to file a suit, Williams was found to not be entitled to recovery under 47:1576.
The court went on, however, to note that Williams was not totally deprived of relief. Mindful of the Claims Against the State procedure available under LA.REV.STAT. 47:1481 and citing Sperry, the court held that Williams could properly seek a judgment declaring the tax unconstitutional.[17] The court stated:
Absent a clear statement of legislative intent to the contrary, we will not read R.S. 47:1576 so narrowly as to deny an aggrieved citizen an otherwise permissible vehicle to challenge judicially the constitutionality of a tax.[18]
We agree with the Williams and Sperry approach. While the Payment Under Protest procedure found in 47:1576 is clearly intended to provide a postdeprivation remedy for the recovery of taxes, nowhere therein does the statute state that it is the sole remedy. The Claims Against the State procedure set forth in 47:1481 allows "any person who has a claim against the State of Louisiana for money erroneously paid into the State Treasury, or for any other claim" to present such claim to the Board of Tax Appeals. It is easily apparent that a tax voluntarily paid pursuant to an unconstitutional statute is "money" "erroneously paid into the State Treasury" by the taxpayer. A taxpayer has erred when he has paid taxes pursuant to an unconstitutional statute because he failed to notice the statute was unconstitutional and therefore paid taxes which were not legally due. At the very least, such a situation falls under the term "any other claim."
LA.REV.STAT. 47:1481 et seq. provides a proper vehicle for the recovery of taxes paid without protest pursuant to an unconstitutional statute.[19] Additionally, any plaintiff whose rights are actually in controversy, i.e. not prescribed under 47:1481, may seek a judgment declaring the tax statute unconstitutional, with such judgment to be used in plaintiff's case before the Board of Tax Appeals.

PRESCRIPTION
Now that we have determined that the method under which the plaintiffs seek to recover is proper, we must determine what prescriptive period applies to plaintiffs' claim. If plaintiffs' action for recovery of taxes based on the alleged unconstitutionality of the Beer Tax Statute is prescribed, then plaintiffs have no ultimate interest in seeking to have the Beer Tax Statute declared unconstitutional, and any such finding by the trial court is an impermissible advisory opinion.
*707 Because 47:1481 only sets forth a procedure by which plaintiffs can seek to have the State pay their claims, the prescriptive period which applies is dependent on the type of claim asserted by plaintiff.[20] In this case, plaintiffs are seeking the recovery of taxes paid pursuant to an allegedly unconstitutional statute. LA.REV.STAT. 47:1623(A) provides:
After three years from the 31st day of December of the year in which the tax became due or after one year from the date the tax was paid, whichever is the later, no refund or credit for an overpayment shall be made unless a claim for credit or refund has been filed with the secretary by the taxpayer claiming such credit or refund before the expiration of said three-year or one-year period.... (emphasis added).
"Overpayment" is defined at 47:1621 as a "payment of a tax ... when none was due, or the excess of the amount of tax ... paid over the amount due."[21]
Regardless of whether we would find the Beer Tax Statute wholly unconstitutional or only partially unconstitutional, plaintiffs cannot avoid the three-year prescription applicable to "overpayments." If we were to find the statute wholly unconstitutional,[22] then plaintiffs would have been paying a tax when none was due. This is included in the definition of "overpayment."[23] Conversely, if we were to find the statute only partially unconstitutional as to the excess taxes that beer wholesalers of out-of-state beer had to pay over and above that paid by wholesalers of in-state beer, plaintiffs would then only be entitled to a refund of the "excess of the amount of tax ... over the amount due." This is also clearly included in the definition of "overpayment" under 47:1621.
Applying the three year prescriptive period found in 47:1623 to the facts of this case, it is clear that any claim for a refund of an overpayment of taxes based on the alleged unconstitutionality of the Beer Tax Statute is fully prescribed. The trial court found that the statute was unconstitutional until its amendment in 1987; therefore, because prescription was interrupted with the filing of the claim in 1988, plaintiffs still had viable claims as to taxes paid in 1986 and 1987. The trial court inadvertently overlooked the fact that any possible discrimination under the Beer Tax Statute ended by the literal terms of the *708 statute in 1982.[24] Therefore, despite plaintiffs' argument to the contrary, even if we were to find the Beer Tax Statute unconstitutional, such a finding would be limited to the years 1974 to 1982. The plaintiffs should not be able to recover taxes paid between 1983 and 1987 simply because the potentially unconstitutional portion of the statute which affected only the years up through 1982 remained on the books until amendment in 1987. As of January 1, 1983, the tax imposed on out-of-state and in-state beer was the same. Plaintiffs did not file a claim with the Board of Tax Appeals until June 17, 1988. Any claim for a refund of taxes based on the Beer Tax Statute is prescribed. Although the trial court was correct in its determination that a three-year prescriptive period applies to plaintiffs' claims, it erred to the extent that it implied plaintiffs might have an unprescribed claim to the recovery of taxes based on the alleged unconstitutionality of the Beer Tax Statute.
We note here that although the trial court is correct regarding the three-year prescriptive period, we affirm this ruling only insofar as it relates to the determination of standing to bring a declaratory judgment. Our holding is not to be interpreted to mean that the action for declaratory judgment itself has prescribed. A plea of prescription cannot be asserted against a suit seeking to declare a statute or ordinance unconstitutional. Louisiana State Medical Society v. Louisiana State Bd. of Nursing, 493 So.2d 581, 584 (La. 1986); Vieux Carre Property Owners & Assoc., Inc. v. City of New Orleans, 246 La. 788, 167 So.2d 367, 371 (1964). In other words, the right to seek a declaratory judgment does not itself prescribe. Rather, prescription is only an issue in terms of the plaintiff's standing to seek the declaratory judgment. If this judgment declaring the statute unconstitutional cannot benefit plaintiffs because their rights to recover the taxes are prescribed, then plaintiffs do not have any rights in controversy sufficient to give them standing to even seek the declaratory judgment. Further, the court will only be able to render an impermissible advisory opinion.
Reading plaintiffs' petition broadly, we also note plaintiffs seek recovery of beer taxes paid from 1982 through 1986 because of the existence at that time of an allegedly discriminatory tax exemption contract between the State and Dixie Brewing Company made pursuant to LA.REV.STAT. 47:4301 et seq. We do not herein pass on the constitutionality of such a contract and scheme, see supra text at n. 6; however, we must determine in light of the State's exception of prescription whether any claim therefor is prescribed. Using the same analysis as was applied to the Beer Tax Statute, we find plaintiffs would be seeking a refund of an "overpayment" subject to a three year prescription under LA.REV.STAT. 47:1623. As the prescriptive period was interrupted with the filing of a claim with the Board of Tax Appeals on June 17, 1988, plaintiffs' claim based on the unconstitutionality of the Tax Exemption Scheme is only prescribed in part. In this respect, the trial court did not err in denying the exception of prescription in part.
Because plaintiffs' petition also sought recovery under Civil Code theories of payment of a thing not due and unjust enrichment, we must also determine whether those claims would be prescribed. If they are not prescribed, then plaintiffs might have some standing for seeking the declaratory judgment. However, we pretermit discussion of prescription with respect to these two types of claims because the law does not afford plaintiffs a remedy under Civil Code theories of recovery. It is well settled that laws regulating the collection of taxes are sui generis and constitute a system to which the general provisions of the Civil Code have little, if any application. Central Savings Bank & Trust Co. v. City of Monroe, 194 So. 767, 769 (La.1940); Dupre v. City of Opelousas, 161 La. 272, 108 So. 479 (1926); Convent Marine Companies v. State, 603 So.2d 790, 794 (La. App. 1st Cir.1992) (Articles on payment of a thing not due "simply do not apply to claims by a taxpayer against a taxing authority *709 for a refund."); Gillette Tire Distributors, Inc. v. City/Parish of East Baton Rouge, 345 So.2d 1255, 1256 (La.App. 1st Cir.1977).

CONCLUSION
Plaintiffs have no right to a refund of an "overpayment" of taxes made pursuant to the allegedly unconstitutional Beer Tax Statute because any such right is prescribed under LA.REV.STAT. 47:1623. There is no actual dispute or controversy, and plaintiffs do not have an interest in seeking a judgment declaring the Beer Tax Statute unconstitutional. We therefore find that plaintiffs lack the requisite standing to bring the action for declaratory judgment. Even if we were to find the statute entirely or only partially unconstitutional, any claims plaintiffs may have to recover taxes based on the unconstitutionality of the Beer Tax Statute would be prescribed. Consequently, any opinion which we might render on the constitutionality of the statute would be merely advisory and prohibited by the constitution.
As such, we vacate the summary judgment declaring the Beer Tax Statute unconstitutional. We affirm the trial court's granting in part and denying in part of the exception of prescription, as clarified in the previous sections. The case is remanded to the trial court for treatment consistent with this opinion of the remaining claims of plaintiffs' petition.
CALOGERO, C.J., concurs.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Marcus, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, et al., No. 92-KK-2065, decided on this date.
[1] Because we find plaintiffs have no standing to obtain a declaration of unconstitutionality, we pretermit deciding whether or not the statute was in fact unconstitutional.
[2] The petition was amended on December 17, 1990 and on January 31, 1991. (Hereinafter, as amended, "petition"). Made defendants in the suit were various individuals in their capacity as representatives of the Department of Revenue and Taxation, the Department of Economic Development, the Board of Commerce and Industry, the Board of Tax Appeals, the State of Louisiana, and the Division of Administration, all of the State of Louisiana. The Division of Administration, appearing through the Commissioner of Administration, was dismissed on January 22, 1991.
[3] It is unclear why the trial judge denied the exception of prescription in part. One possibility is based on the fact that the judge found the Beer Tax Statute unconstitutional up until its amendment in 1987. Accordingly, if prescription was interrupted on June 17, 1988, plaintiffs might still be able to recover for taxes paid from June 17, 1985 until the amendment of the statute in 1987. Without deciding whether the statute is unconstitutional, we note that any differential treatment between in-state and out-of-state beer terminated by 1983. See infra text at n. 24.

On the other hand, the judge also may have denied the exception in part because of plaintiffs' additional claim under the petition based on LA.REV.STAT. 47:4301, et seq. (the Tax Exemption Scheme). Plaintiffs alleged that the beer tax was levied in a discriminatory manner pursuant to an exemption contract entered into with Dixie Brewing Company under the Tax Exemption Scheme during the period of October 1, 1982 through December 31, 1986. Applying the three year prescriptive period, because the suit was filed with the Board of Tax Appeals on June 17, 1988, plaintiffs' claim for a recovery of the taxes paid from 1982 through 1986 based on the unconstitutionality of 47:4301 would only be prescribed in part. See infra.
[4] See Tucker v. New Orleans Laundries, Inc., 127 So.2d 182, 183 (La.1961).
[5] Because the merits of the exception of prescription are bound up with our determination on standing, we choose to exercise jurisdiction over the exception even though it is only an interlocutory judgment, being granted in part and denied in part.
[6] Indeed, although plaintiffs urge the issue on appeal, they did not do so during the hearing on the motion for summary judgment. See the trial court's Oral Reasons for Judgment at p. 285 of the Record where the plaintiffs' attorney stated, "We didn't come here today arguing that 4302 was unconstitutional. We came here today arguing that 26:342 was. And that'sthat's what we confined our remarks to. That's what we confined our motion to."

Also not before us, although urged in plaintiffs' petition, is the alleged unconstitutionality of the "Claims Against the State" procedure set forth in LA.REV.STAT. 47:1481-1486.
[7] The present corresponding sections are found in Article V, Sections 5, 10, & 16 of the 1974 Constitution.
[8] See Article II, Sections 1 & 2 of the 1974 Constitution; State v. Board of Supervisors of Elections, 186 La. 949, 173 So. 726, 731 (1937) (The powers of the state are divided into the executive, legislative and judicial branches; only the judicial branch has the authority to declare statutes unconstitutional.); and Red River Coors, Inc. v. McNamara, 577 So.2d 187, 189 (La.App. 1st Cir.), writ denied, 582 So.2d 1306 (1991) ("The Board of Tax Appeals does not have the authority to decide the constitutionality of a statute, since to do so is strictly a function of the courts.").
[9] The gist of the State's argument is that plaintiffs lack standing to obtain a judgment declaring the statute unconstitutional because the procedural use to which the judgment will be put the Claims Against the State schemedoes not allow for the recovery of taxes which could have been paid under protest.
[10] Id. at 38-39, 110 S.Ct. at 2251.
[11] Id. at 44-45, 110 S.Ct. at 2254.
[12] Id.
[13] LA.REV.STATS. 47:1576 provides in pertinent part:

A. [A]ny taxpayer protesting the payment of any amount found due by the secretary of the Department of Revenue and Taxation, or the enforcement of any provision of the tax laws in relation thereto, shall remit to the Department of Revenue and Taxation the amount due and at that time shall give notice of intention to file suit for the recovery of such tax. Upon receipt of this notice, the amount remitted shall be placed in an escrow account and held by the secretary or his duly authorized representative for a period of thirty days. If suit is filed for recovery of the tax within the thirty-day period, the funds in the escrow account shall be further held pending the outcome of the suit. If the taxpayer prevails, the secretary shall refund the amount to the claimant, with interest at the rate established pursuant to Civil Code Article 2924(B)(3) from the date the funds were received by the Department of Revenue and Taxation to the date of such refund. Payments of interest authorized by this Section shall be made from funds derived from current collections of the tax to be refunded.
B. ....
C. This Section shall afford a legal remedy and right of action in any state court having jurisdiction of the parties and subject matter, for a full and complete adjudication of any and all questions arising in the enforcement of this Subtitle as to the legality of any tax accrued or accruing or the method of enforcement thereof. In such action, service of process upon the secretary shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.
D. This Section shall be construed to provide a legal remedy in the state courts in case such taxes are claimed to be an unlawful burden upon interstate commerce, or the collection thereof, in violation of any Act of Congress or the United States Constitution, or the Constitution of Louisiana.
E. ....
[14] Because it is not before us, we do not herein decide whether or not the Claims Against the State procedure is unconstitutional as alleged by plaintiffs in their petition. See supra n. 6. Plaintiffs argue the procedure violates the Due Process Clauses of both the U.S. and Louisiana Constitutions because a taxpayer has no right of appeal or judicial review to a court from the Board of Tax Appeal's rejection of his claim. Plaintiffs also assert the legislature has unconstitutionally failed to provide a remedy for the recovery of nonprotested beer taxes.
[15] LA.REV.STAT. 47:1481 provides:

Any person who has a claim against the State of Louisiana for money erroneously paid into the State Treasury, or for any other claim, may present such claim to the board of tax appeals, in such form and together with such proofs as the board of tax appeals may require by its rules and regulations. The board shall duly examine into the justice, merits and correctness of each such claim presented to it, and shall officially pass thereon.
LA.REV.STAT. 47:1483 states:
If the claim is approved and it should be an amount not exceeding one thousand dollars, the chairman of the board of tax appeals shall issue a warrant upon the State Treasurer, for the amount for which the same is approved, stating in said warrant the amount, purposes, and reasons for which the same is drawn. If said claim shall amount to more than one thousand dollars, and is approved by said board of tax appeals, the chairman, giving all the facts and circumstances in connection therewith, shall report the same to the next session of the legislature for its consideration....
LA.REV.STAT. 47:1486 provides:
An action of the board rejecting or refusing to approve any claim under this Part may not be appealed to the courts. However, nothing contained in this Part shall deny a claimant whose claim has been rejected by the board the right to petition the legislature for permission to sue on the claim in a court of proper jurisdiction.
If the board rejects the claim, and the claimant obtains permission to sue from the legislature, claimant is entitled to a de novo trial in the courts. However, it is clear that a claimant has no right of action in district court for the recovery of taxes if he did not pay his taxes under protest pursuant to 47:1576. Thus, although the Board has the authority "to approve a refund of taxes paid without protest, when the Board rejects the claim, the taxpayer does not have a right of action to take the claim to court." Convent Marine Companies v. State, 603 So.2d 790, 792-93 (La.App. 1st Cir.1992). Note however that a plaintiff with a claim other than for the recovery of taxes can petition the legislature and sue in court.
If the board approves the claim, the statute does not prohibit the State from appealing the decision. However, on appeal, the State does not get a de novo trial and must show that the Board committed manifest error in its factual findings or an error of law. St. Pierre's Fabrication & Welding, Inc. v. McNamara, 495 So.2d 1295 (La.1986).
[16] The court found that the availability of two separate remedies is made explicit in LA.REV. STAT. 47:1621(D) which states in part:

In the event a taxpayer believes that the collector has misinterpreted the law or promulgated rules and regulations contrary therewith, his remedy is by payment under protest and suit to recover, or by appeal to the board of tax appeals in instances where such appeals lie.
[17] The clear implication of this holding was that the declaratory judgment could then be used in the Board of Tax Appeals during the 47:1481 hearing. See 538 So.2d at 198 n. 11.
[18] See also Red River Coors, Inc. v. McNamara, 577 So.2d 187, 189 (La.App. 1st Cir.), writ denied, 582 So.2d 1306 (1991) ("The Louisiana Board of Tax Appeals has the authority under La.R.S. 47:1481 to grant a refund of taxes even when taxes were not paid under protest, if the tax is subsequently found unconstitutional and the principles of justice and equity require a refund.").
[19] We reject the State's argument that our finding the Claims Against the State procedure can be used to recover taxes paid without protest is in violation of Art. VII, Sec. 14 of the Louisiana Constitution of 1974. Section 14(A) prohibits "[e]xcept as otherwise provided by this constitution," the loaning, pledging, or donation of funds of the state. This Section does not prohibit our holding for two reasons. First, this case does not involve a loan, pledge, or donation of money but rather a refund of money paid by the taxpayer pursuant to a possibly unconstitutional statute. Second, even if such a refund could be construed to amount to a loan, pledge or donation, Art. 7, Sec. 3 states the legislature must provide a "complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer." The legislature has attempted to provide such a remedy with the Payment Under Protest and Claims Against the State procedures.
[20] Plaintiffs err in arguing that LA.REV.STAT. 49:112 provides a 10-year prescriptive period for their claims. Title 49, Section 112 states in pertinent part:

No claim or debt against the state shall be allowed by the state auditor or paid by the state treasurer after the lapse of ten years from the happening of the event or of the facts upon which any suit is founded or judgment rendered or of the execution of the contract under which the claim is made.
We believe this statute merely imposes an outer limit on the authority of state officials to pay claims generally. It applies in addition to, and not instead of, specific prescriptive periods which vary depending on the type of claim.
[21] We reject plaintiffs' argument that the applicability of the definition of "overpayment" as found in 47:1621(A) is limited to Section (B) of 47:1621. Section (A) clearly says that overpayment is defined "[f]or the purpose of this chapter." The chapter referred to is Chapter 18 which includes 47:1623, the section on prescription of a refund of an overpayment.

We likewise reject plaintiffs' contention that the 3-year prescription under 47:1623 applies only to overpayments under Section (B) of 47:1621. Section (D) clearly states that the remedy to recover taxes "overpaid" through a mistake of law is through payment under protest or by appeal to the board of tax appeals where such appeals lie.
[22] See State v. Russland Enterprises, 555 So.2d 1365, 1370 (La.1990) and State v. Azar, 539 So.2d 1222, 1226 (La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989) for discussion on when unconstitutional portions of a statute can be severed so as to avoid having to declare the entire statute unconstitutional.
[23] Plaintiffs themselves cite several cases which hold that if a statute is declared entirely unconstitutional, it is treated as if it never existed. Vieux Carre Property Owners & Assoc., Inc. v. City of New Orleans, 246 La. 788, 167 So.2d 367, 371 (1964); Flournoy v. First Nat'l Bank of Shreveport, 197 La. 1067, 3 So.2d 244, 248 (1941). Plaintiffs err in arguing that the definition of "overpayment" as payment of a tax "when none was due" includes only payment of a constitutional tax when none was due. The definition is not so limited; and, it is logical that if an unconstitutional tax is treated as if it never existed, then any payment pursuant thereto was payment "when none was due."
[24] See the 1979 Amendment quoted at the beginning of this opinion.