Dear Secretary Bridges:
In your letter to us requesting an attorney general's opinion, you explain that you have received a public records request to disclose whether an individual has filed a tax return and the date the return was filed. In connection with your request, you point to R.S. 47:5108, which mandates that all tax records be kept confidential and privileged but also provides for exceptions to this rule. You also cite our previous La. Atty. Gen. Opinion No. 96-532, which, relying also on previous La. Atty. Gen. Opinion No. 90-242, concluded that there was no legal prohibition against the Department of Revenue and Taxation making public, upon request, the information as to whether an individual has filed a Louisiana personal income tax return for a given year. Unfortunately, La. Atty. Gen. Opinion No. 96-532 also added that disclosure of such information to the public at large was mandatory upon request because it is part of a public record within the meaning of Louisiana's open "public records law," R.S. 44:1 et seq. and 31 et seq. Now, you request further clarification in light of the particular request for disclosure that you have recently received and specifically ask whether the Department of Revenue, in responding to a public record request to disclose information as to whether an individual has filed a Louisiana personal income tax return for a given year, is mandated to include the date the tax return is filed.
It is our opinion that the date of filing of an individual income tax return falls within the scope of the intent and meaning of "tax data," R.S. 47:1508(B)(8), which must be kept confidential and which the Department of Revenue is prohibited from disclosing to the public in response to a simple public records request.
There are a number of legal issues that had to be resolved in arriving at this conclusion as well as some other complex legal questions that indirectly but inextricably bear upon the problem presented by your request for further explanation and clarification as to public disclosures involving individual income tax returns. Included among these is the need to correct an inaccuracy in previous La. Atty. Gen. Opinion No. 96-532 concerning public records. That inaccuracy was in appearing to conclude that certain personally identifying information contained in individual income tax returns were part of the public record within the scope of the intent and meaning of R.S. 44:1 et seq. and 31 etseq. and that its disclosure to any member of the public at large was, under such provisions, mandatory upon request. It is necessary to dispose of this question first because the jurisprudence of the state courts has construed R.S. 44:1 et seq. and 31 et seq. in conjunction with La. Const. (1974) art. 12, § 3 (mandating that no person shall be denied the right to (examine public documents, except in cases established by law) to the end that, except for public records exempted therefrom by law, access by a member of the public to a public record for inspection and copying is a "fundamental right." See, for example, Local100, Service Employees-International Union v. Forrest, 95 1954 (La.App. 1st Cir. 5/10/96), 675 So.2d 1153 [citing Title Research Corp. v.Rausch, 450 So.2d 933 (La. 1984)].
However, all of the information contained in a tax return (other than certain information, including names and addresses, contained in an occupational license, which is not implicated in this situation) is excluded from being a "public record" within the intent and meaning of R.S. 44:1 et seq. and 31 et seq. In this regard, R.S. 44:4(1) clearly provides,
 "§ 4. Applicability
 "This Chapter shall not apply:
 "(1) To any tax return or the information contained in any tax return. However, the name and address of any person who obtains an occupational license, the information on the face of the license, and information as to whether an occupational license has been issued to a particular person shall be public records.
 * * *
(Emphasis added.) This provision is separate and apart from the exceptions to confidentiality provided in R.S. 47:1508. For its own reasons irrelevant to R.S. 44:1 et seq. and 31 et seq., R.S. 47:1508, as a sui generis tax statute, creates a special and unique rule of confidentiality and special and unique exceptions thereto. Accordingly, regardless of what R.S. 47:1508(B) provides, R.S. 44:4(1) exempts from the "public records law" (R.S. 44:1 et seq. and 31 et seq.) all information contained in tax returns (except certain information, including names and addresses, contained only in occupational licenses, which are not involved here). As a consequence, we hereby recall, disapprove, and overrule the inaccuracy contained previous La. Atty. Gen. Opinion No. 96-532 insofar as it appears to conclude that information contained in individual tax returns (not occupational licenses) are part of the public record within the scope of the intent and meaning of R.S. 44:1 et seq. and 31 et seq. and that disclosure to any member of the public at large is mandatory upon simple request.
This exemption of tax return information from the Public Records Law is a practical necessity, because the collection of many state taxes, including especially the state income taxes, relies critically on information revealed from federal tax returns to your department by federal authorities for the purpose of tax collection and enforcement and26 U.S. Code § 6103 [particularly § 6103(a)(2)] and26 U.S. Code § 7213 [particularly § 7213(a)(2)] require state authorities to maintain such information in strict confidence. Indeed, R.S. 47:293(1) defines an individual's adjusted gross income for state income tax purposes as Athe adjusted gross income of the individual for the taxable year that is reportable on the individual s federal income tax return,id. Thus, it would appear to be difficult, if not impossible, to enforce properly the state income tax law or to collect fully the state income taxes due to the state without the aid of such strictly confidential federal information.
With the Public Records Law question under R.S. 44:1 et seq. and 31 etseq. thus disposed of, a closer look may be had at R.S. 47:1508 with respect to your opinion request. But in doing so, we must emphasize that the Local 100, Service Employees-International Union case, supra, does not apply to this situation involving your request, since that case involved an occupational license (for nursing), which is not removed from the statutory scope of an open "public record" by R.S. 44:4(1), as is the individual tax return referred to in your request.
When records maintained by a state agency are not "public records" within the scope of the intent and meaning of R.S. 44:1 et seq. and 31 etseq. because they are specifically and expressly excluded therefore by such statutes as R.S. 44:4(1), then, unless they are otherwise governed by another special statutory provision, the head of the agency, within his or her sound discretion, must determine whether inspection of them will be allowed when there is a request therefore, and, if so, what information is to be disclosed and what information is to be withheld. For the most part, tax returns are governed by special statutory provisions, including R.S. 47:1508 and 1508.1, which vastly restrict the Secretary's discretion in the matter. R.S. 47:1508(A) provides, in pertinent part, the general rule, which reads as follows:
 "Except as otherwise provided by law, the records and files of the secretary of the Department of Revenue or the records and files maintained pursuant to a tax ordinance, excluding ad valorem property taxes and ad valorem property tax assessment rolls, of any political subdivision are confidential and privileged, and no person shall divulge or disclose any information obtained from such records and files except in the administration and enforcement of the tax laws of this state or of a political subdivision of this state."
R.S. 47:1508(C) and 1508.1 provide criminal penalties for unauthorized disclosure. The remainder of R.S. 47:1508 establishes various exceptions to this general rule of non-disclosure. Applicable to the situation described in your request, R.S. 47:1508(B) provides, in pertinent part:
 § 1508. Confidential character of tax records
 "* * *
 "B. Nothing herein contained shall be construed to prevent:
 "* * *
 "(8) The secretary from disclosing the name and address of any taxpayer who has filed an income or corporation franchise tax return, but he shall not disclose any tax data whatsoever with respect to any taxpayer, and such information shall be made available to any taxpayer upon his request.
 * * *"
R.S. 47:1508(B)(8) does not exempt from R.S. 47:1508(A)'s sweeping rule of strict confidentiality the "date of filing" of the income tax return. Indeed, the date of filing is pivotally significant "tax data" directly affecting the time, manner, and ultimate amount of payment to be made in compliance with the tax laws. For example, R.S. 47:103 establishes the importance of the date of filing and allows the Secretary, in accordance with statutory procedures, to grant extensions thereof. R.S. 47:105
clarifies that the time of payment of the taxes, as well as the tax assessment itself, is determined by the date of filing and the date the filing is legally due. R.S. 47:1602 involves the date of filing and the due date of filing in the determination of whether tax penalties are assessed and to what extent they are assessed. Accordingly, the date of filing of an income tax return, in our opinion, falls within the scope of strict confidentiality mandated by R.S. 47:1508(A) and 1508.1 and not within the exemption provided by R.S. 47:1508(B)(8).
While this analysis answers the particular point of the immediate question, your request and our previous opinions referenced in your request now urge us to caution you about recently increasing anomalies in this area of law with respect to public disclosure of names linked with addresses and the federal government's executive and legislative recognition of address confidentiality as a vital crime prevention tool and as a matter falling within the scope of personal privacy protections, including possibly constitutional privacy protections. Thus, a potential constitutional conflict may be approaching over R.S.47:1508(B)(8)'s apparent mandate to "make available," id., the name and address of any taxpayer who has filed an income or corporation franchise tax return-to any taxpayer upon his request, id.
First, as noted hereinabove, this statutory provision to make names and addresses of income tax payers available to other taxpayers is a specialsui generis rule of this particular tax legislation and does not fall within the rule of the Public Records Law. R.S. 44:4(1)'s specific exemption for "the information contained in any tax return" makes R.S. 44:1et seq. and 31 et seq. inapplicable to all such information in income tax returns and, therefore, creates a public records exception established by law pursuant to La. Const. (1974) art. 12, § 3. Moreover, the R.S.47:1508(B)(8) provision uniquely limits disclosure of the information to other taxpayers only and does not provide for disclosure to the public, that is, not to any person, as provided by R.S. 44:31(B)(1), nor to every person, as provided by La. Const. (1974) art. 12, 3. Tax laws are considered to be sui generis legislation. Church Point WholesaleBeverage Co., Inc. v. Tarver, 614 So.2d 697, 708-709 (La. 1993) and the authorities cited therein.
The crux of the growing legal conflict appears to be with the following rationale expressed in Local 100, Service Employees-International Union,supra, and quoted from Webb v. City of Shreveport, 371 So.2d 316
(La.App. 2nd Cir.), writ denied, 374 So.2d 657 (La. 1979) in finding that city employees do not have a reasonable expectation of privacy against governmental disclosure of their names and addresses:
 "A person's employment, where he lives, and where he works are exposures which we all must suffer. We have no reasonable expectation of privacy as to our identity or as to where we live or work."
Local 100, Service Employees-International Union, supra, at p. 5,675 So.2d at 1156 (emphasis added). This rationale was applied in arriving at the conclusion that address confidentiality is not an expectation of privacy that "society at large is prepared to recognize as being reasonable," id., at p. 4, 675 So.2d at 1156.
The conflict is that there is, in reality, a large and growing body of law and evidence that society at large does indeed recognize address confidentiality as being a reasonable expectation of privacy. R.S.44:11(A)(3) now provides that the home address of public employees in public employment records shall be confidential when such employees have so requested (legislatively overruling, in essence, Webb v. City ofShreveport, supra, the rationale of which, set forth hereinabove, was quoted and followed in Local 100, Service Employees-International Union,supra). Both R.S. 46:2134(B) and Ch. C. art. 1568(B) provide specific evidence of the recognition by society of the reasonableness of address confidentiality in domestic litigation. Particularly in the cases of afemme sole, address confidentiality, or at least the use of initials to disguise the gender of the resident, has long been recognized and recommended as a crime prevention tool against criminals who would target them as potential victims. At the federal level, the U.S. Justice Department has specifically recommended address confidentiality programs in its official anti-stalking report. See Stalking and DomesticViolence: The Third Annual Report to Congress under the Violence AgainstWomen Act, U.S. Department of Justice, Office of Justice Programs, Washington, D.C. 20531; Available: "http://www.ojp.usdoj.gov/vawo/grants/stalk98.pdf"; p. 21. Address confidentiality programs even include the establishment by the state government itself in the office of a statewide elected officer, such as the secretary of state, of accommodation and forwarding addresses for private citizens. See, for example, the California Secretary of State's "Safe-at-Home" program, explained on the Internet at URL: "http://www.ss.ca.gov/safeathome/Safe_at_ Home_explanation.htm. And address confidentiality was the overriding motive for the federal Drivers Privacy Protection Act of 1994 (18 U.S. Code § 2721-2725), which binds states and supersedes their own internal open disclosure policies with respect to public records.
It is perhaps in the federal Drivers Privacy Protection Act of 1994 (DPPA) [Pub.L. 103-322, title XXX, Sec. 300002(a), Sept. 13, 1994] that the conflict between the federal policy of the right to privacy, including social recognition for the reasonableness of the privacy expectation of the right to be let alone,16B Am.Jur.2d, Constitutional Law § 603 (1998) and Olmstead v. U.S., 277 U.S. 438, 478 (1928) (Brandeis, J., dissenting), in the peace and tranquility of one s own private residence and to maintain address confidentiality to that end,versus some states' internal "open disclosure" policies with respect to public records, as explained in the rationale quoted hereinabove from theLocal 100, Service Employees-International Union case, supra, including the power of the state to obligate private citizens to place their private names and addresses into public records from which they must be disclosed openly to persons whose purpose is to violate and disturb the peace and tranquility enjoyed by such private citizens in their private residences, has reached the point of head-to-head collision. In the DPPA, Congress essentially prohibited the several states, except for specific purposes explicitly stated in the law, from disclosing certain personal information, including one's residential address, from the states' motor vehicle records, unless the person whose address it is consents to such disclosure. See 18 U.S. Code § 2721 et seq. Some states filed lawsuits challenging the constitutionality of Congress' power to enact such a prohibition against the several states, but the DPPA was finally held by the U.S. Supreme Court, in Reno v. Condon, 528 U.S. 141
(2000), to be constitutionally valid. Although, in specific response to the particular constitutional challenge raised by South Carolina in that case, the U.S. Supreme Court in Condon held the DPPA to be a valid exercise by Congress of its commerce power, the Congressional explanation of the Act by its authors, especially Senator Barbara Boxer (Dem-CA), clearly reveal that the Act was also enacted as an exercise of Congress' power pursuant to Section 5 of the Fourteenth Amendment to the U.S. Constitution to enforce the federal constitutional rights of U.S. citizens, in this case, to enforce against the states the individual's fundamental federal constitutional right to privacy:
 Mrs. BOXER. Mr. President, today I join the Senator from Virginia [Mr. Warner] and 26 other cosponsors, to offer an amendment to protect the privacy of all Americans.
 "In California, actress Rebecca Schaeffer was brutally murdered in the doorway of her Los Angeles apartment by a man who had obtained her home address from my State s DMV.
 "In Iowa, a gang of teenagers copied down the license plate numbers of expensive cars, obtained the home addresses of the owners from the Department of Transportation, and then robbed them at night.
 "In Tempe, AZ, a woman was murdered by a man who had obtained her home address from that State's DMV.
 "And, in California, a 31-year-old man copied down the license plate numbers of five women in their early twenties, obtained their home address from the DMV and then sent them threatening letters at home. I want to briefly read from two of those letters.
 "I'm lonely and so I thought of you. I'll give you one week to respond or I will come looking for you."
 "Another one read:
 "I looked for you though all I knew about you was your license plate. Now I know more and yet nothing. I know you're a Libra, but I don't know what it's like to smell your hair while I'm kissing your neck and holding you in my arms."
 "When they apprehended him, they found in his possession a book entitled "You Can Find Anyone" which spelled out how to do just that using someone's license plate.
 "In 34 States, someone can walk into a State Motor Vehicle Department with your license plate number and a few dollars and walk out with your name and home address. Think about this. You might have an unlisted phone number and address. But, someone can find your name or see your car, go to the DMV and obtain the very personal information that you may have taken painful steps to restrict.
 "Mr. President, the American people think that this is wrong. In a recent Lou Harris survey, 80 percent of the people were uncomfortable with one person obtaining this type of information about another.
 "Can we afford to wait until every State has their own tragedy? That is not the way to legislate. Our Representatives are elected to lead, to think ahead and, at every turn, to find ways to protect the people they represent. In many States, police officers, public figures and other victims of these privacy abuses have been allowed to request that the DMV keep their home addresses confidential. Of course, these people deserve privacy and protection. But, so do all of our people.
 "* * *
 "With this amendment we have an opportunity to protect the privacy and safety of all Americans, not just the VIP's with special clout.
 "This area is clearly within Congress' authority to regulate. First, this is a fundamental issue of privacy. The Supreme Court has found that people have a right to be safe in their homes, that they have a right not to have the Government make public their personal data and that Congress can use it's powers, section 5 of the 14th amendment, [to] provide remedies for violations to constitutional rights.
 "What's more, with mail, cars, and harassment involved, this issue clearly has an impact on interstate commerce. As such, under article 1, section 8, this area is well within Congress' authority to regulate. We all understand that interstate commerce is severely threatened when mail is used, when people are scared to drive in their cars, when their civil rights are violated, and when they live in fear of being harassed and stalked.
Congressional Record, 103rd Congress (Senate, November 16, 1993), H.R. 3355 (successfully offering the DPPA as an amendment to the then still pending Violent Crime Control and Law Enforcement Act of 1993).
Thus, if the apparent Congressional view that the fundamental federal constitutional right to privacy extends to address confidentiality in public records, then a further anomaly may have been created with respect to interpreting La. Const. (1974) art. 1, § 5's privacy provision. The Supreme Court of Louisiana has said that this provision is broader in scope and more stringent in the protection of individual liberty than the federal constitutional right to privacy implied by the Bill-of-Rights amendments to the U.S. Constitution. State v. Perry, 610 So.2d 746, 756
(La. 1992). But if the Supreme Court of Louisiana continues to follow the rationale quoted above from Local 100, ServiceEmployees-International Union, supra, on the basis that La. Const. (1974) art. 12, 3, together with the statutory legislation enacted to implement it, invades and restricts La. Const. (1974) art. 1, § 5 s privacy provision as a competing and conflicting [state constitutional] value, 52 La. L. Rev. 575, 584 (1992), then the result might well turn out to be that La. Const. (1974) art. 1, 5, is significantly narrower in scope and less stringent in the protection of individual liberty than the federal constitutional right to privacy made applicable to the several states through the due process clause of the Fourteenth Amendment.
Unless and until the legislature amends R.S. 47:1508(B)(8)'s provision requiring mandatory disclosure to other taxpayers of names and addresses in individual income tax returns, so as to bring this provision in line with R.S. 44:11(A)(3), and/or until the federal and state judiciaries finally resolve in detail all of these anomalies dealing with privacy protection, address confidentiality, and mandatory disclosure of names and addresses contained in public records, R.S. 47:1508(B)(8)'s mandatory disclosure provision remains presumptively valid legislation; however, in this meantime, a potential federal civil rights violation also hangs, like the Sword of Damocles, over simple compliance with this provision. For this reason, our responsibility to give good legal advice and guidance compels us to make you aware of the option of allowing the courts to resolve individual conflicts over such matters, in order to protect yourself legally. Accordingly, when the name and address from the income tax return of an individual taxpayer is requested by another taxpayer, you can choose, as a precaution, to notify the taxpayer whose return it is, in a manner similar to what was done in Hays v. Lundy,616 So.2d 265 (La.App. 2nd Cir. 1993) writ granted and aff'd as amended,621 So.2d 616 (La. 1993), to inform the taxpayer of the request for his name and address from his individual income tax return and of the identity of the requestor, in order to allow the taxpayer to decide and inform you of either his consent to the disclosure or his assertion of a right to privacy protection with respect to the disclosure request. If he consents to the disclosure, then the name and address may be made available without concern. If he asserts a right to privacy protection against the disclosure of his address, then you could file a declaratory judgment action in state court and implead both the requestor and the individual taxpayer to litigate the issue between themselves and have the court settle the matter. In impleading the individual taxpayer, his address, which he seeks to protect in the lawsuit, should be sealed as confidential in the court record until the court can resolve the merits. See, as an analogous example, the "Confidential Address Form", available at URL: http://www.orleanscdc.gov/forms/cdc/abuse.pdf, approved for use in the Orleans Parish Civil District Court in domestic cases.
And, of course, you already know that, in any event, you may not reveal any version of such name and address which has been corrected, supplemented, or otherwise changed with federally shared information protected by 26 U.S. Code § 6103 and 7213 or which contains a notation of verification from such information. In this regard, a person's name and mailing address from his federal tax return is a constituent part of "taxpayer identification," 26 U.S. Code § 6103(b)(6), falling within these federal laws.
Trusting this opinion has adequately answered your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: THOMAS S. HALLIGAN Assistant Attorney General
RPI/TSH