# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 20-61

NIDAL BALBESI, ET AL.

VERSUS

LAFAYETTE-CITY PARISH CONSOLIDATED

GOVERNMENT, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20163011
HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**********

**D. KENT SAVOIE**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, John E. Conery, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Robert A. Mahtook, Jr.**
**Ward F. Lafleur**
**Kay A. Theunissen**
**Amy J. Miller**
**Mahtook & Lafleur**
**600 Jefferson Street, Suite 1000(70501)**
**P.O. Box 3089**
**Lafayette, LA 70502-3089**
**(337) 266-2189**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Lafayette Utilities System**
**Lafayette City-Parish Consolidated Government**

**Jeffrey Michael Bassett**
**Patrick C. Morroe**
**Richard T. Haik, Jr.**
**Richard T. Haik, Sr.**
**Morrow, Morrow, Ryan, Bassett & Haik**
**P.O. Drawer 1787**
**Opelousas, LA 70571-1780**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFS/APPELLANTS:**
**Agave Cantina, Inc.**
**Lana Kopieczek**
**Mark Kopieczek**
**Nidal Balbesi**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFS/APPELLANTS:**
**Agave Cantina, Inc.**
**Lana Kopieczek**
**Mark Kopieczek**
**Nidal Balbesi**

**Robert L. Willmore** (*pro hac vice*)
**Teresa M. Abney** (*pro hac vice*)
**Crowell & Moring LLP**
**1001 Pennsylvania Ave., NW**
**Washington, DC 20004**
**(202) 624-2500**
**COUNSEL FOR PLAINTIFS/APPELLANTS:**
**Agave Cantina, Inc.**
**Lana Kopieczek**
**Mark Kopieczek**
**Nidal Balbesi**

**SAVOIE, Judge.**

Plaintiffs appeal the trial court's summary judgment dismissal of their claims challenging the constitutionality of annual transfers of a portion of revenue generated by the Lafayette Utilities System (LUS) to the City General Fund of Lafayette City-Parish Consolidated Government ("Lafayette"). These transfers are referred to as payments in-lieu-of-tax ("ILOT payments"). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

LUS is a public utility that provides electric, water, and wastewater services to residents of the City of Lafayette and certain areas of Lafayette Parish. It was established by Lafayette[1] as a "revenue-producing utility," as contemplated by La.Const. art. 6, § 37, La. R.S. 33:4161, et. seq., and their historical counterparts. As such, since 1949, Lafayette has issued various bonds to provide funding for LUS's construction, operations, and improvements, with LUS's revenue securing the bonds. LUS's primary source of revenue is charges to its customers for services.

The various bond resolutions and ordinances between Lafayette and the bondholders establish how LUS's revenue is to be deposited into and/or flow through a series of funds or accounts. Then, according to the bond resolutions and ordinances, once LUS's revenue has flowed through this series of funds, if the remaining balance in the Bond Reserve and Capital Additions Fund, less required reserves, is less than or equal to twelve percent of LUS's annual revenue, then that balance will be transferred from LUS to the City General Fund. Otherwise, if the

---

[1] For simplicity, "Lafayette" refers to the current Lafayette City-Parish Consolidated Government, and the Lafayette City government prior to consolidation of the Parish and City governments in 1996.

balance is greater than twelve percent of LUS's annual revenue, twelve percent is the maximum amount that may be transferred to the City General Fund. These annual transfers of up to twelve percent of LUS's revenues from LUS to the City General Fund are referred to herein as "ILOT payments" and are the subject of this litigation. The annual ILOT payment from LUS to the City General Fund has increased over time from less than $2 million in 1975, to between $20 million and $24 million since 2015.

On June 6, 2016, Plaintiffs Nidal Balbeisi, Mark Kopieczek, Lana Kopieczek, Agave Cantina, Inc., "and other persons similarly situated," filed a Class Action Petition for Declaratory Judgment and Damages, naming as Defendants, Lafayette City-Parish Consolidated Government and LUS (collectively, "Defendants"). Therein, they allege that the ILOT payments Lafayette has imposed, and continues to impose, upon LUS is an unlawful circumvention of La.Const. art. 7, § 21(A), which prohibits the imposition of ad valorem property taxes on public property used for public purposes. In their Petition, Plaintiffs seek certification of a proposed class, a declaratory judgment ruling that the ILOT payments violate La.Const. art. 7, § 21(A), as well as a judgment requiring Defendants to refund Plaintiffs and each of the Class Members amounts paid to LUS which are attributable to ILOT payments transferred by LUS to Lafayette. Plaintiffs also seek interest and attorney fees.

On April 29, 2019, Plaintiffs filed a Motion for Summary Judgment seeking a judgment declaring that the ILOT payments made by LUS since 1975 to Lafayette "were made in violation of the exemption in Article VII, § 21(A) of the Louisiana Constitution of 1974 exempting from ad valorem taxation all public lands and other public property used for public purposes." In support thereof, they submitted an affidavit of Theresa Abney, as attorney pro hac vice in the subject litigation, as well

as documents attached to that affidavit, including the deposition of Lafayette, through its designated representatives Lorrie Toups, Terry Huval, and Becky Lalumina, Defendants' written responses to discovery requests, City of Lafayette Board of Trustees Resolutions from 1949, 1954, 1958, 1962, 1963, and a 2004 General Utilities Revenue Bond Ordinance No. 0-122-2004.

On June 7, 2019, Defendants filed a cross Motion for Summary Judgment seeking to dismiss Plaintiffs' claims, arguing that the ILOT payments are authorized by Louisiana law and do not violate La.Const. art. 7, § 21(A). In support thereof, they submitted City of Lafayette Board of Trustees Resolutions from 1949 and 1963, a 2004 General Utilities Revenue Bond Ordinance No. 0-122-2004, and the transcript of the deposition of Lafayette, through its designated representatives, Lorrie Toups, Terry Huval, and Becky Lalumina.

The parties' cross motions for summary judgments were heard on July 8, 2019. On July 19, 2019, the trial court signed a judgment granting Defendants' motion, denying Plaintiffs' motion, and dismissing Plaintiffs' claims.[2]

Plaintiffs appeal. They submit the following as their sole assignment of error:

> The trial court erred in granting appellees' motion for summary judgment, denying appellants' motion for summary judgment, dismissing appellants' claims against appellees, and failing to issue a declaratory judgment that the annual in-lieu-of-tax payments made by LUS to the City were in violation of Article VII, § 21(A) of the Louisiana Constitution, which prohibits ad valorem taxation of public lands and other public property use for public purposes.

## STANDARD OF REVIEW

As recognized in *Samaha v. Rau,* 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted),

---

[2] We note that, while a Motion to Certify the Class was filed in August 2016, it was not ruled upon prior to the rendition of the summary judgment.

3

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 p. 3 (La. 11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181 p. 17 (La. 3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337 p. 7 (La. 10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424 p. 5 (La. 4/14/04), 870 So.2d 1002, 1006.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

## ANALYSIS

The issue presented in the parties' cross motions for summary judgment is whether the annual ILOT payments from LUS to Lafayette's City General Fund violate La.Const. art. 7, § 21(A), which states as follows:

Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:

(A) Public lands and other public property used for public purposes. Land or property owned by another state or owned by a

4

political subdivision of another state shall not be exempt under this Paragraph.

On appeal, Plaintiffs argue that because LUS is part of a political subdivision of the state and uses its property to provide a public function in the form of utility services, it is exempt from ad valorem tax in accordance with La.Const. art. 7, § 21(A). According to Plaintiffs, the annual ILOT payments should be considered de facto ad valorem taxes, and, therefore, unconstitutional, for several reasons, including: (1) ILOT payments are treated identically to property tax receipts from a budgetary and spending standpoint; (2) ILOT payments are not surplus revenue generated from selling utilities, are unrelated to services provided to LUS customers, and are imposed solely to generate revenue; (3) ILOT payments are involuntary charges passed on to customers to compensate for property taxes that would otherwise be allowable for private utility companies; and (4) ILOT allows Lafayette to impose taxes on city residents outside of the protections and accountability provided for in the normal taxing process.

In support of their argument, Plaintiffs cite to *Audubon Ins. Co. v. Bernard*, 434 So.2d 1072 (La.1983), wherein the Louisiana Supreme Court found that legislation allowing the Insurance Rating Commission to collect from insurers a percentage of their collected premiums to go towards the Firefighter's Retirement System unconstitutionally levied a new tax. In so holding, the supreme court stated as follows, upon which Plaintiffs' rely in arguing that ILOT is an unconstitutional property tax:

> It is well settled generally and in Louisiana that not every imposition of a charge or fee by the government constitutes a demand for money under its power to tax. If the imposition has not for its principal object the raising of revenue, but is merely incidental to the making of rules and regulations to promote public order, individual liberty and general welfare, it is an exercise of the police power. In

5

similar fashion, the police power may be exercised to charge fees to persons receiving grants or benefits not shared by other members of society. But if revenue is the primary purpose for an assessment and regulation is merely incidental, or if the imposition clearly and materially exceeds the cost of regulation or conferring special benefits upon those assessed, the imposition is a tax.

*Id.* at 1074 (internal citations omitted).

Plaintiffs also cite to *Williams v. State*, 538 So.2d 193 (La.1989), wherein the supreme court held that legislation imposing a handling fee on vehicle registration renewals violated a constitutional provision that limited the cost of an automobile license to $3.00. Plaintiffs further cite to *Hicks v. City of Monroe Utilities Commission*, 112 So.2d 635 (La.1959), which held that the public utility company's rate for water services provided to residents who did not also use the municipality's electric services was unlawfully discriminatory because it was higher than the rate for water services charged to residents who also used the municipality's electric services.

In addition, Plaintiffs cite to the following opinions from the Louisiana Attorney General indicating that, while revenue-producing public utilities may charge for services and transfer the revenue to the municipality, they may only do so if the charge is a payment for services provided and not a tax, which is a fee that clearly and materially exceeds the cost of the special benefits conferred: La.Atty. Gen. Op. Nos 91-260, 98-401, 98-504, and 00-124. Plaintiffs argue that the portion of LUS's revenue transferred to the City General Fund (the ILOT payments) are not generated from payment of services rendered, but rather exceed the cost of the services provided.

In response, Defendants argue on appeal that the annual ILOT payments are not ad valorem taxes as they are in no way related to valuation of any property and

Plaintiffs have failed to establish any evidence to the contrary. Further, according to Defendants, it is not ILOT that generates revenue for Lafayette; instead, it is LUS that generates revenue by providing utility services to its customers, and a portion of that revenue is transferred to the City General Fund as ILOT payments.

In support of their argument, Defendants note the deposition testimony of Lafayette's Chief Financial Officer, Lorrie Toups, wherein she explains that ILOT is a provision of LUS's general bond ordinances that *limits* the amount of utility revenue that may be transferred from LUS to the City General Fund. Ms. Toups also indicated that charges to customers for utility services are LUS's primary source of revenue. According to Ms. Toups, while "[t]he revenues of [LUS] could be used for any legal governmental purpose," "the Council can't take all the revenue out of the Utility System" because of ILOT limitations in the bond ordinances.

Defendants further argue that the fact the bond ordinances' provisions limiting the amount of LUS's utility revenue that can be transferred to the City General Fund references the annual transfer of revenue as a "payment-in-lieu-of-tax" does not convert the ILOT transfers into a de facto ad valorem tax.

Defendants also point out that ad valorem taxes and other forms of taxation are not the only forms of permissible revenue for political subdivisions. Rather, Part II of La.Const. art. 6, entitled Finance, authorizes and governs various forms of local government financing, including not only taxation, but also revenue-producing property from revenue-producing public utilities such as LUS. Specifically, La.Const. art. 6, § 37, states in part as follows[3]:

> Section 37. (A) Authorization. The legislature by law may authorize political subdivisions to issue bonds or other debt obligations

---

[3] Article 14 of the Louisiana Constitution adopted in 1921 contained similar language.

to construct, acquire, extend, or improve any revenue-producing public utility or work of public improvement. The bonds or other debt obligations may be secured by mortgage on the lands, buildings, machinery, and equipment or by the pledge of the income and revenues of the public utility or work of public improvement. They shall not be a charge upon the other income and revenues of the political subdivision.

In accordance therewith, La.R.S. 33:4161, et. seq.[4], provides for the creation and funding of revenue-producing public utilities, which are defined as:

any revenue-producing business or organization that regularly supplies the public with a commodity or service, including electricity, gas, water, . . . , and other like services; or any project or undertaking, including public lands and improvements thereon, owned and operated by a political subdivision authorized by the Constitution of Louisiana or by law to issue bonds, from the conduct and operation of which revenue can be derived.

La.R.S. 33:4161.

Further, Louisiana Revised Statutes 33:4163 expressly allows a political subdivision to "sell and distribute the commodity or service of the public utility . . . and establish rates, rules, and regulations with respect to the sale and distribution." In addition, La.R.S. 33:4162 contemplates the issuance of bonds for certain funding relating to the revenue-producing public utilities. It states, "[a]ny political subdivision authorized by the Constitution of Louisiana or by law to issue bonds may construct, acquire, extend, or improve any revenue-producing public utility and property necessary thereto, either within or without its boundaries, and may operate and maintain the utility in the interest of the public." *Id.*

Defendants argue that LUS was established as a revenue-producing utility authorized by Louisiana law, LUS permissibly generates revenue for Lafayette, and

---

[4] As noted by Reporter's Notes-1950 to La.R.S. 33:4162, prior to the Louisiana Revised Statutes of 1950, Act No. 80 of the Special Session of 1921, as amended, and by Act No. 218 of 1946, were "comprehensive acts setting forth in detail the method of financing public utility improvements."

Lafayette issued revenue bonds to obtain funding for LUS as authorized by La.R.S. 33:4162.

Defendants further explain that, in accordance with the various bond ordinances and resolutions, only a limited percentage of annual revenue generated by LUS may be transferred to the City General Fund in order to ensure the availability of adequate funding for LUS's operating expenses, bond payments, necessary reserves, and capital improvements, and these limited transfers of LUS's revenue to the City General fund are the ILOT payments at issue herein. Therefore, according to Defendants, the ILOT payments are not taxes, but rather are a limited percentage of LUS's revenue that LUS generates from providing utility services to its customers.

With respect to how LUS's rates for services are determined, Defendants note the deposition testimony of Terry Huval, who testified as a designated representative on behalf of Lafayette. Mr. Huval explained that LUS's rates are set on an as-needed basis by the City-Parish Council after an independent engineering consultation and rate study to determine what rates are needed to support its operations and capital needs. Mr. Huval further explained that, while the dollar amount of the budgeted ILOT transfer from LUS to the City General Fund is one of the costs considered in a rate study, the actual ILOT payment is still limited to a certain percentage of revenue each fiscal year as established by the bond ordinances and resolutions; therefore, LUS's rates cannot simply be increased at any time so that the budgeted ILOT payment is actually generated. Mr. Huval also testified that, in the event LUS's revenue and resulting ILOT transfer to the City General Fund are projected to be less than what was budgeted, the City-Parish Council may not transfer

additional funds from LUS, and, in certain circumstances, they may even be required to amend the budget.

Defendants further argue that local governments may legally and constitutionally raise revenue for their general funds from revenue-producing public utilities and there is no support for Plaintiffs' suggestion that it is impermissible to set utility rates beyond the cost to operate and fund the utility. In support of their argument, Defendants cite to the supreme court's statement in *Bd. of Com'rs of La. Mun. Power Comm'n v. All Tax Payers, Property Owners, and Citizens,* 360 So.2d 863,868 (La.1978), that "historically, net utility revenues have been transferred to the general funds of the cities."

Defendants also cite to *City of Lake Charles v. Wallace*, 170 So.2d 654 (La.1964), wherein the court upheld the constitutionality of a city ordinance that declared that the collection and disposal of garbage was a revenue-producing utility and imposed a service charge to defray the expenses of disposal and maintenance. On rehearing, the supreme court stated:

> 'A state or one of its subdivisions frequently receives income from sources other than taxation, so that all forms of public revenue cannot with accuracy be called taxes. Thus, a city or town is frequently authorized to furnish some form of public service for profit, or at least for compensation. Such charges are not in any just sense taxes. Thus, it is well settled that the charges made upon consumers by municipal waterworks are not taxes, but merely the price paid for commodity sold. Nor may the following exactions be regarded as taxes: [. . . ] a fee charged for [. . .] removing garbage.[. . .]' 51 Am.Jur. Taxation, Sec. 16, p. 48-49.
> . . . .
>
> We do not find that the instant charge assessed for the collection and disposal of garbage is a tax; it is a service charge. The fact that revenue was received from the collection of such service charge levied under the police power of the city (the tax was upon occupants, not upon property) does not ipso facto convert the ordinance into a tax measure. As stated supra, we find that no vote of the electorate was required for the enactment of Ordinance No. 1381. We also conclude

that it is not necessary for said ordinance to conform to the millage provisions of the Constitution and the Revised Statutes.

*Id.* at 660-61.

In addition, Defendants cite to La.Atty. Gen. Op. No. 02-59, which states:

(i) municipalities are given the statutory authority to sell and distribute the commodity or service of public utilities, (ii) municipalities may establish rates, rules, and regulations with respect to the sale and distribution, and (iii) the charges made upon consumers by municipally owned utilities are not taxes, [therefore,] it is the opinion of this office that a significant transfer of utility revenues to a municipalitys' [sic] general fund, does not cause the monies received from the sale of the commodity to be a tax nor an illegal tax.

Defendants also argue that Plaintiffs' reliance on *Audubon*, 434 So.2d 1072, *Hicks,* 112 So.2d 635, and *Williams*, 538 So.2d 193, is misplaced, as those cases involve different issues than what is presented herein. Defendants note *Audubon* involved a legislatively imposed assessment on insurers, rather than revenue generated from a revenue-producing public utility. Defendants also note that *Hicks* involved the issue of whether a utility rate was unconstitutionally discriminatory; yet, whether LUS's rates are discriminatory is not at issue here. Defendants further note that *Williams* involved a "handling fee" that was imposed to circumvent a constitutionally established licensing fee; yet, there is no alleged fee circumvention at issue in the instant case.

We agree with Defendants that LUS is a revenue-producing public utility as contemplated by La.Const. art. 6, § 37 and La. R.S. 33:4161, et. seq. and that, in accordance therewith, LUS may generate revenue in connection with its operations.

We further agree with Plaintiffs that LUS is exempt from ad valorem taxation as contemplated by La.Const. art. 7, § 21(A). However, after reviewing the record, we find no support for Plaintiffs' suggestion that the ILOT payments, which are a limited percentage of LUS's revenue that is transferred annually to the City General

Fund, should be considered a de facto ad valorem tax simply because the transfers are referred to in the bond ordinances as "payments-in-lieu-of tax", and/or they are placed into the City General Fund along with other tax revenue. There is no evidence indicating that ILOT payments are in any way related to the value of any property.

Further, while Plaintiffs argue that the ILOT payments should be considered de facto ad valorem taxes because they are unrelated to the utility services LUS provides to its customers, Plaintiffs fail to provide any evidence in support of this argument. Instead, the only evidence in the record indicates that ILOT payments are in fact a percentage of LUS's revenue, which is primarily generated by charges to its customers for utility services. Moreover, we find no authority supporting Plaintiffs' position that the portion of LUS's revenue that exceeds the cost of its operations must be considered a de facto ad valorem tax. Therefore, the trial court's ruling is affirmed.

## DECREE

For the reasons set forth above, the trial court's summary judgment dismissal of Plaintiffs' claims against Defendants herein is affirmed. Costs of this appeal are assessed to Plaintiffs, Nidal Balbeisi, Mark Kopieczek, Lana Kopieczek, and Agave Cantina, Inc.

**AFFIRMED.**